UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| H.R. BUSHMAN & SON, CORP., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:06CV1638 CDP ) |
| SPUD PACKERS, INC., et al., | ) ) |
| Defendants. | ) ) |

# MEMORANDUM OPINION

# AND ORDER

At the beginning of the bench trial held on March 10, I granted plaintiff H. R. Bushman & Son Corp.'s renewed motion to allow amendment of the complaint, and directed that the amended complaint be filed. I then ordered that the trial would be bifurcated, and I head the evidence concerning Counts I through IV, which are identical to Counts I through IV of the original complaint. After the newly added defendants and the existing defendants have answered Counts V through VIII of the amended complaint, we will determine what, if any discovery, is needed on those new counts, and then will have a later bench trial on all issues remaining in the case. those counts. I also heard evidence on plaintiff's first motion for contempt, which seeks to hold Terry Humes in contempt for the sale of

a warehouse property. The motions for contempt related to the newly-added defendants Jack Humes and Nancy Humes will be determined along with remaining counts of the amended complaint.

As set forth in my March 4, 2008, order, all other parties have settled their claims, so I will dismiss those claims. I will also allow payment of the mediator's fee from the funds deposited into the court registry, and will allow Terry Humes to spend additional of his private funds to pay his attorneys.

The essential dispute in this case is whether Terry Humes is personally liable to Bushman for the full amount of the debt that Spud Packers owes Bushman. If Bushman complied with PACA, he is, but if Bushman extended the payment terms beyond the 30 days allowed by PACA, then it would lose its PACA trust rights. I conclude that under prevailing law of this circuit, Bushman properly preserved its trust rights, so both Humes and Spud Packers are fully liable on the debt. They also are both fully liable for the interest allowed under Missouri law for this debt.

### **Findings of Fact**

In my order ruling on summary judgment, I determined that the following facts were undisputed and deemed established:

Defendant Spud Packers, Inc. bought produce from plaintiff H. R. Bushman & Son, Corp. Both Bushman and Spud Packers operated under valid PACA licenses. Spud Packers failed to pay Bushman invoices totaling $321,553.05. At least initially, Bushman preserved its rights as a PACA trust beneficiary by including the statutory trust preservation statements on the face of each invoice and sending a copy to defendants. The parties agree that the PACA trust rights are preserved as to invoices totaling $189,276.55. Terry Humes argues that plaintiff did not preserve its PACA trust rights as to the remaining invoices, which total $132,276.50.

Additionally, the parties have stipulated to the following facts, and so they are established:

Defendant Terry Humes was the sole director, sole officer, and 75% shareholder of Spud Packers, and he was in a position to and did control the operations and financial dealings of Spud Packers. Bushman sold sixty-two loads of produce to Spud Packers between July 20, 2006 and October 2, 2006. Bushman included the statutory trust preservation statement on each invoice. All produce was accepted, and all invoices were duly sent and received.

The evidence presented at trial established the following facts:

Bushman is owned by Rosalyn Pupillo. Rosalyn Pupillo keeps (or

supervises others who keep) the books and records and is in charge of billing. Her husband Salvatore Pupillo acts as general manager and is in charge of sales and other aspects of the business. Tom Pupillo, brother of Sal, acts as one of the produce sales brokers and handled the Spud Packers account.

Bushman and defendants have done business with one another for over a decade. The terms of the Bushman invoices have always been that payment is due in 30 days. All witnesses agreed that they all knew that this 30 day payment term was necessary to preserve PACA trust rights. The Pupillos testified that they never extended the term to allow later payments. That does not mean, however, that they refused to accept late payments.

Spud Packers was sometimes current in its payments, but was frequently late. Tom Pupillo often went to local customers, including Spud Packers, on Fridays to pick up checks. When Spud Packers' account became overdue, Tom Pupillo developed a practice of faxing a computer printout of the amounts owed to Terry Humes, and marking the printout to show various amounts that he expected to collect from Spud Packers on various Fridays. Each printout contained a complete listing of all unpaid invoices, and contained a summary at the bottom showing what amounts were current (meaning less than 30 days from shipment), and showing what amounts were past due, in increments of 31 to 45 days, 46 to 60

days, 61 to 120 days, and over 121 days past due. Any past due amounts had an asterisk, and the printout stated, above the summary: "Invoice Balances Flagged with An * Are Over 30 Days Outstanding. Please Pay Immediately." Tom Pupillo's faxes often contained circles of past due amounts, and lines separating specific invoices groups with a note showing a dollar amount (the sum of the invoices between the lines) and a note such as "due today 2-14-06" or "due Friday 2-17-06." Spud Packers, however, did not necessarily pay those amounts on those Fridays. Sometimes the payments were more, sometimes they were less.

Terry Humes contends that these documents reflect an extension of the payment terms, which would void the PACA trust rights. Bushman contends that its attempts to collect and its continuing to deal with Terry Humes even though Spud Packers owed money did not extend the terms of the contracts so as to waive the PACA trust rights.

The evidence establishes that although the parties had developed a course of dealing whereby Bushman continued to sell produce to Spud Packers even though the invoices had not been paid in the required 30 days, there was no agreement to extend the payment terms beyond the 30 day due date. On numerous occasions Terry Humes assured both Tom and Sal Pupillo that he would pay the invoices, and they relied on these assurances in continuing to do business with him.

For several months leading up to October of 2006, Tom Pupillo had sent printouts to Terry Humes as described above, showing amounts that were past due, with notations showing what payments Tom expected to pick up on each Friday. He sent the last printout on October 16, 2006. Bushman made its last shipment to Spud Packers on October 2, 2006; it shipped no more after that date because the account was overdue. On October 16 Spud Packers owed Bushman $367,333.68. Only $29,404.45 of that amount was current.

Sal Pupillo and Terry Humes had a telephone conversation around the same time as the October 16 fax, and Humes told Pupillo that he was attempting to get financing to pay off the loan. Pupillo did not say that continued non-payment was acceptable, but continued to press Humes for payment.

By early November, when the account had still not been paid, Sal Pupillo went to Terry Humes' office at Spud Packers. Pupillo again told Terry Humes he wanted his money, and Terry Humes again told Pupillo that he was working on getting the money. Terry Humes testified that this meeting took place on Thursday, November 9, 2006 and that he spent the following weekend meeting with a financial backer in an attempt to come up with the money.

On Monday, November 13, 2006, Bushman filed this suit, and obtained a Temporary Restraining Order, freezing the assets of Terry Humes and Spud

Packers, and requiring Terry Humes to provide notice of the TRO to his bankers and others. An attorney entered an appearance for Terry Humes on November 15, and that same day I held a hearing on Terry Humes' motion to modify the Temporary Restraining Order. I granted the relief requested, which was that Spud Packers be allowed to use its existing inventory to fill its Thanksgiving orders and to pay its workers through November 22, 2006 in an amount not to exceed $25,000. Humes had not complied with the order to serve the TRO on his bankers, but he did not seek to modify the TRO on that basis. The motion to modify the TRO did not seek any relief or modification for Terry Humes personally.

In late November, I held a preliminary injunction hearing where many of these same issues were raised, and I issued a preliminary injunction on December 5, 2006. The preliminary injunction continued to freeze Terry Humes's assets and again ordered him to provide notice of the injunction to his bankers and others. He did not comply with this order. By its terms, the preliminary injunction was to remain in effect until the defendants paid Bushman the sum of $182,778.50 or until further order of the Court.

Less than a week later, on December 11, 2006, Spudpackers declared bankruptcy. Humes still did not notify his financial institutions about the

injunction freezing his personal assets that had been entered previously. I administratively closed this case after being notified of the bankruptcy. As my earlier order has indicated, my administrative closure of the case was an error, because Terry Humes did not declare bankruptcy, so the automatic stay did not apply to the claims against him. I should have instead entered an order staying the claims against him pending resolution of the bankruptcy. In any event, in an earlier order I have concluded that the legal effect of the administrative closing was the same as a stay: it simply took the case off my active docket, but the preliminary injunction remained in effect. On February 14, 2007, after the plaintiffs had received relief from the stay, I reopened this case. No party raised any question about whether the preliminary injunction remained in effect at that time. Humes still had never notified his bankers of the freeze on his personal assets.

On or about May 2, 2007, Terry Humes and his wife sold property at 4400 Geraldine Ave., St. Louis, Missouri 63115 to Duncan Avenue Partners, LLC. Before the sale, Terry Humes had been told by his wife's attorney (*not* by counsel of record in this case or by bankruptcy counsel) that the preliminary injunction was no longer in effect. The building sold for $725,000.00. A significant portion

of the sale proceeds was used to pay off the mortgage and the fees associated with the sale. Still, Terry Humes received a balance of $109,862.18. Additionally, $10,875.00 was paid to Terry Humes's brother, Jack Humes, for legal work on the real estate transaction. Another $44,705.10 was transferred to NH Auto Sales, LLC, an entity owned by Terry Humes's wife, Nancy Humes. This amount was paid to the wife's company because the company had previously loaned Spudpackers money.[1]

In July 2007, plaintiffs filed a motion for contempt with regard to the sale of the Geraldine property, and the parties fully briefed this motion. On October 3, 2007, I notified the parties that I would resolve the PACA claim objections and the contempt motion at the same time.

## Conclusions of Law

The Eighth Circuit Court of Appeals has held that neither a course of dealing in accepting late payment nor an oral agreement to extend the terms of payment will overcome the PACA trust protections. See Hull v. Hauser's Foods,

---

[1] Around this same time, Terry Humes was coming into substantial amounts of money, because his father had passed away and he and his brother, Jack Humes, were the beneficiaries of an estate valued over $2 million. This inheritance, and several property transfers among the various Humes family members during the same time frame, are the subject of the Second Amended Complaint and the Contempt motion against Nancy Humes and Jack Humes.

924 F.2d 777, 781-82 (8th Cir. 1991).  Still, "PACA trust rights are lost whenever the parties enter into a written agreement that satisfies the generally applicable Statute of Frauds."  Patterson Frozen Foods v. Crown Foods Int'l, 307 F.3d 666, 671-672 (7th Cir. 2002); see also Bocchi Americas Ass'n, Inc. v. Commerce Fresh Mktg., Inc., 2008 WL 183738, at *4 (5th Cir. January 23, 2008); Phillip Mushroom Farms, L.P. v. Gold Star Mushroom Co., Inc., 2004 WL 620166, at *5 (E.D. Pa. March 29, 2004).  In this case, Missouri's statute of frauds governs and will be satisfied if a document contains all the essential terms of the contract.  Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651, 654 (8th Cir. 1991).

Although Bushman had a course of dealing whereby it continued to do business with Spud Packers even though the account was delinquent, the evidence does not establish that Bushman entered into a written agreement with Spud Packers to extend that sale term.  All of the notices, even the ones sent by Tom Pupillo, contained statements that Spud Packers was to pay immediately on all invoices over 30 days old.  Neither Tom Pupillo's handwritten notations nor the parties' course of dealing extended that term of the sales.  As a result, all of Bushman's claims in the amount of $321,553.05 are covered by PACA, and Bushman properly protected its interest in all of these PACA trust assets.

Those who are in a position of control over PACA trust assets and who breach their fiduciary duties to preserve those assets may be held personally liable under PACA. Weis-Buy Services, Inc. v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005); citing Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997). This liability is derived from common law breach of trust principles. Weis-Buy, 411 F.3d at 421. Because there is no dispute in this case that Humes was in a position of control over the trust assets in this case, he is personally liable for any PACA trust assets; he is therefore personally liable for the full amount that Spud Packers owes Bushman. Terry Humes and Spud Packers are therefore jointly and severally liable to Bushman for the principal amount due of $321,553.05.

Under Missouri law, prejudgment interest of nine percent should be awarded if the amount owed is liquidated or readily ascertainable and a demand for payment has been made. Mo. Rev. Stat. § 408.020. "Awards of prejudgment interest are not discretionary; if the statute applies, the court must award prejudgment interest." Children Intern. v. Ammon Painting Co., 215 S.W.3d 194, 202 (Mo. Ct. App. 2006). Additionally, statutory prejudgment interest is included in Bushman's PACA claim because a PACA claim properly includes the produce and all sums owing in connection with the transaction. See Middle Mountain Land and Produce Inc. v. Sound Commodities Inc., 307 F.3d 1220, 1222-23 (9th

Cir. 2002). In many ways this is just a typical unpaid account suit, and Spud Packers and Humes are liable for prejudgment interest at the rate of nine percent set by Missouri law. They have argued that the full amount should not be paid because some of the money was paid into the court registry, but this argument fails. Until Spud Packers settled the claims of the other PACA creditors, Bushman had no assurance that it would receive the bulk of what it was owed. Bushman was out the money it should have received, and the interest is necessary to make it whole. Furthermore, it was the actions of Humes and Spud Packers – including the bankruptcy filing and the transfer of property – that caused most of the delays in this case. Payment of the full amount of prejudgement interest to Bushman is required by law and is in the interests of justice. Through March 10 this amount is $44,918.94, but interest will continue to accrue at the same rate until judgment is entered,[2] unless payment is made before that time. Thus, the amount for which Terry Humes and Spud Packers are jointly and severally liable is $366,471.99, through March 10, 2008.

With regard to the motion for contempt, "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order."

---

[2]Post-judgment interest will then accrue at the (lower) federal rate, which will be determined as of the date the judgment is entered.

Chaganti & Ass., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir. 2006) (citation omitted). Civil contempt is used either to coerce a defendant into compliance with a court order or to compensate for the losses that occurred as a result of noncompliance. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949). Therefore, lack of willfulness is not a defense in a civil contempt action. Id. As a result, advice of counsel is not a defense to a civil contempt proceeding, although it may be considered by the court in fashioning the remedy. See S.E.C. v. McNamee, 481 F.3d 451, 456 (7th Cir. 2007); see also Rogers v. Webster, 776 F.2d 607, 612 (6th Cir. 1985).

There is no question that Humes was aware of the preliminary injunction and TRO. He was served with both documents and has stated that he understood both documents. He was present in the courtroom for the hearing on the motion to modify the TRO and for the preliminary injunction hearing. I have already ruled that the preliminary injunction remained in effect, even though I had administratively closed this case, and that the sale of the Geraldine property violated the preliminary injunction. Additionally, Humes's failure to serve the TRO and preliminary injunction on his bankers and others also violated the orders. Humes's sale of the Geraldine property has destroyed Bushman's ability to secure a lien on that property. Therefore, I will order Humes to pay $154,567.28 into the

court's registry. This includes not only the $109,862.18 which he received as proceeds from the sale, but also the $44,705.10 that his wife's company received. The evidence shows that these are PACA trust assets, and that Humes controlled their distribution to him and to his wife's company in violation of both PACA and the preliminary injunction. He is in contempt of court, and payment of these funds into the registry is necessary to remedy – at least partially – his contempt.[3]

I will not order Terry Humes to return the amount that was disbursed to his brother as legal fees from the real estate transaction. I also believe that the amounts Terry Humes paid to the Greensfelder firm in the amount of $27,820.15 should also be allowed, and I will not enter a contempt order related to the disbursement of these funds. I will approve Humes' request to modify the preliminary injunction to allow payment of an additional $7500 in monthly legal fees, beginning with fees incurred in February 2008. Finally, I will today enter a pay out order allowing the mediator fee of $2843.75 to be paid from the court registry.

## **Conclusion**

Spud Packers and Humes are jointly and severally liable to Bushman in the

---

[3] At Bushman's option, these funds could be paid directly to Bushman, but whether paid directly to Bushman or into the court registry, they must be paid forthwith.

sum of $366,471.99 on Counts I, II, and IV of the original and amended complaint. Spud Packers alone is liable for the same amount on Count III. I cannot enter judgment, however, until the remaining counts are resolved. Additionally, except for the payment of the mediator's fees, I do not believe I should disburse further funds until the case is resolved. Once Humes pays the amounts ordered here to the court registry, the amounts in that registry will be close to $350,000, excluding the administrative fee. As Bushman is the only remaining claimant, I would consider disbursing the funds sooner, upon motion, but I would need to know the position of both parties before I can do this.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff H.R. Bushman is entitled to judgment in the amount of $366,471.99 against defendant Spud Packers and Terry W. Humes, jointly and severally.

**IT IS FURTHER ORDERED** that plaintiff's motion for contempt against defendant Terry Humes [#98] is granted, and Terry Humes shall pay $154,567.28 into the Court's registry forthwith.

**IT IS FURTHER ORDERED** that plaintiff's motion for contempt against Jack H. Humes and Nancy L. Humes shall be heard at the bench trial along with Counts V-VIII and those defendants shall be prepared to show cause why the

motion for contempt pending against them should not be granted.

**IT IS FURTHER ORDERED** that defendant Terry Humes's motion to amend the preliminary injunction [#218] is granted to allow him to use his personal assets to pay an additional $7,500.00 in attorney's fees per month, beginning with February 2008; and the court will order the sum of $2843.75 to be paid to the mediator, Richard Sher, from the registry funds.

**IT IS FURTHER ORDERED** that plaintiff H.R. Bushman's motion for an order to show cause [#165] is denied and defendant Terry Humes's motion for a ruling approving payment of attorney's fees [#172] is granted.

**IT IS FURTHER ORDERED** that, pursuant to their notices and stipulations of dismissal, the complaints of plaintiffs Idaho Fresh Produce, Inc., Ruby Robinson Co. Inc., Associated Potato Growers, Inc., Monte Vista Potato Growers Cooperative Association, O.C. Schulz & Sons, Inc., Western Potato, Inc., Ben Holmes Potato Co., Inc., Frenchman Valley Produce, Inc., H.C. Schmieding Produce Co., Inc., and Geo A. Heimos Produce Company, Inc. are dismissed and these parties shall be terminated from this action.

**IT IS FURTHER ORDERED** that the Clerk of Court shall disburse the sum of $2843.75 from the registry funds to Richard P. Sher, 190 Carondelet Plaza, Suite 1100, St. Louis, MO 63105. This disbursement shall come from principal,

and does not include any accrued interest.

**IT IS FURTHER ORDERED** that no defendant need answer Counts I through IV of the amended complaint, but answers to the new counts of the amended complaint must be filed as required by the Federal Rules of Civil Procedure.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2008.